**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
Case No.: 0:26-cv-61557

**ADAM ROHLMAN,**
An individual,

      Plaintiff,

v.

**INTREPID POWERBOATS, INC.,**
a Florida corporation, and
**INTREPID SOUTHEAST, INC.,**
a Florida corporation,

      Defendants.

_____ /

**COMPLAINT FOR DAMAGES**
**AND DEMAND FOR JURY TRIAL**

Plaintiff ADAM ROHLMAN, by and through his undersigned counsel, sues

Defendants INTREPID POWERBOATS, INC. ("Intrepid") and INTREPID SOUTHEAST,

INC. ("Intrepid Southeast") (collectively, "Defendants"), and alleges:

**BACKGROUND**

This action arises from Defendants' sale of a new 2023 Intrepid 41 Valor to Plaintiff

Adam Rohlman for $993,895.00 and their delivery of a vessel so fundamentally defective that

it has been inoperable, unreliable, and unsafe for the overwhelming majority of Plaintiff's

ownership. From the date of delivery, the Vessel's Mastervolt inverter/charger system, a

prototype-level configuration that Intrepid installed on only two boats before abandoning

entirely, displayed persistent error codes, failed to maintain charge, and rendered the Vetus

Variable bow thruster and Joystick Piloting Outboard chronically inoperable, creating

dangerous conditions each time Plaintiff attempted to use the Vessel. A wiring harness required

to connect the engines to the power system was never installed at the factory, a manufacturing omission so basic it went undetected for over two years while Defendants attempted repair after repair. Despite more than two and a half years of repair attempts, Defendants remain unable to deliver the functional vessel Plaintiff paid for; the Vessel cannot be safely docked, generates errors on every attempted use, has sat largely idle, and two separate marine brokers have advised Plaintiff it cannot be sold at any reasonable market value because of its well-documented defects.

## JURISDICTION AND VENUE

1.      This is an action for breach of express and implied warranties pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq., in an amount exceeding $50,000, and for revocation of acceptance under Florida Statute § 672.608 in an amount exceeding $75,000.

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq., a federal statute, and pursuant to 15 U.S.C. § 2310(d).

3.      This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367, as all claims arise from the same case or controversy.

4.      Venue is proper in the Southern District of Florida, Fort Lauderdale Division, pursuant to 28 U.S.C. § 1391(b) because Defendant Intrepid Southeast, Inc. maintains its principal place of business at 805 N.E. Third Street, Dania, Broward County, Florida 33004, and a substantial part of the events giving rise to Plaintiff's claims, including the sale of the Vessel and the repeated failed repair attempts, occurred in this District.

5.      This Court has personal jurisdiction over Defendant Intrepid Powerboats, Inc., a Florida corporation conducting business throughout this State, and over Defendant Intrepid Southeast, Inc., a Florida corporation with its principal place of business within this District.

## THE PARTIES

6.      Plaintiff Adam Rohlman is an individual residing in Marion County, Florida, and is a citizen of the State of Florida.

7.      Defendant Intrepid Powerboats, Inc. is a Florida corporation with its principal place of business at 11700 Belcher Road South, Largo, Florida 33773, engaged in the design, manufacture, marketing, and sale of recreational powerboats, including the 2023 Intrepid 41 Valor at issue in this action.

8.      Defendant Intrepid Southeast, Inc. is a Florida corporation with its principal place of business at 805 N.E. Third Street, Dania, Florida 33004, and is a wholly-owned subsidiary of Intrepid Powerboats, Inc., as confirmed by the MarineMax, Inc. SEC Form 10-K Exhibit 21, which reflects the complete corporate chain of MarineMax, Inc. through Marinemax Products, Inc. through Intrepid Powerboats, Inc. to Intrepid Southeast, Inc.

9.      Intrepid Southeast acted as Intrepid's retail sales arm in this transaction and is not an independent third-party dealer; rather, it is a wholly-owned corporate subsidiary of the manufacturer, and the sale of the Vessel to Plaintiff was in substance a direct manufacturer sale.

## FACTUAL ALLEGATIONS

10.     On or about June 15, 2023, Plaintiff purchased a new 2023 Intrepid 41 Valor recreational powerboat, Hull Identification Number IBW41047D223, Florida Registration No.

FL4501TP (the "Vessel"), from Defendant Intrepid Southeast pursuant to Invoice No. 41047, dated June 15, 2023.

11.     The Vessel was sold to Plaintiff for a net purchase price of $975,000.00, with a total amount paid including Florida sales tax, surtax, and registration of $993,895.00.

12.     The Vessel was powered by triple Mercury 400 V10 5.7L outboard engines (serial numbers 3B373907 port, 3B374127 center, and 3B374627 starboard) and was equipped with, among other features, a Mastervolt inverter/charger system, Mastervolt MLI Ultra 24/6000 batteries (four units), a Vetus Variable bow thruster, Mercury Joystick Piloting Outboard, and a Garmin navigation and electronics package.

13.     In connection with the sale, Defendant Intrepid provided Plaintiff with a written limited warranty (the "Warranty") representing that the Vessel was free from defects in materials and workmanship, obligating Intrepid to repair or replace defective items manufactured by Intrepid for a period of one year from delivery, and warranting the Vessel's hull and fiberglass structural components for a period of five years from delivery.

14.     Plaintiff purchased the Vessel primarily for personal, family, and household recreational use, and paid a substantial price with the reasonable expectation of receiving a seaworthy, fully operational vessel consistent with Defendants' representations.

15.     Upon delivery of the Vessel in June 2023, the Vessel was afflicted with multiple material defects in materials, workmanship, assembly, and manufacture that Defendants failed to disclose and that substantially impaired the value, use, and safety of the Vessel.

16.     The central and most serious manufacturing defect was a fundamental malfunction in the Vessel's Mastervolt inverter/charger system (the "Inverter System"), which serves as the backbone of the Vessel's onboard electrical infrastructure, controlling battery

charging, the Vetus Variable Bow Thruster, the Mercury Joystick Piloting Outboard ("JPO"), and the Garmin autopilot system.

17.     From the date of delivery, the Inverter System displayed persistent error codes on its display screen upon each use of the Vessel, failed to maintain adequate battery charge, and rendered the Vessel's Vetus Variable bow thruster, JPO, and Garmin autopilot inoperable or unreliable; when the Vetus Variable bow thruster is inoperative, the JPO and Garmin autopilot do not function.

18.     The Vetus Variable bow thruster and JPO are not ancillary convenience features; they are the primary means by which a vessel of the Vessel's size and design is safely maneuvered in marinas, at docks, and in confined or wind-affected waterways, and their unavailability due to Inverter System failures creates an unreasonable safety hazard each time Plaintiff attempts to use the Vessel.

19.     At delivery, the Mastervolt Inverter System had not been connected to the Vessel's Garmin chartplotter and display network as designed, specified, and represented by Defendants, leaving the system operating outside its intended integrated configuration.

20.     At delivery, the green LED indicator lights on the Vessel's inverter circuit breaker panel, which are intended to confirm that the Inverter batteries are actively charging, were non-functional, depriving Plaintiff of the ability to monitor the charging status of the system.

21.     At delivery, multiple circuit breakers in the Vessel's electrical panel lacked required identifying labels, leaving Plaintiff without the ability to safely identify and manage the operation of the Mastervolt Inverter System.

22.     At delivery, the Vessel's sliding cabin door exhibited a visible fiberglass defect, reflecting deficient quality control in the Vessel's manufacture and finishing.

23.     Intrepid installed the Mastervolt Inverter System in the configuration used on the Vessel on only two boats before abandoning the use of inverter systems entirely, a fact unknown to Plaintiff at the time of purchase, which demonstrates that the Inverter System as installed on the Vessel was an unproven, prototype-level configuration that Intrepid was unable to manufacture and deliver in a functional state; the Vetus Variable bow thruster installed on the Vessel was likewise used by Intrepid on only the same two boats and was integrated with the Mastervolt Inverter System in the same failed configuration.

24.     When Plaintiff purchased the Vessel, Defendants represented to him that a primary selling point of the Mastervolt Inverter System was that the newly-introduced 150-amp high-output alternators on the triple Mercury 400 V10 outboard engines would charge the Inverter batteries while the engines were running, obviating the need for a separate gas generator; the high-output alternators were new to the 2023 model-year Mercury 400 V10, and upon information and belief, Mercury encouraged Intrepid to pair the new alternators with the Mastervolt Inverter System in lieu of a conventional generator.

25.     This representation was false as delivered: a wiring harness required to connect the Mercury outboard engines to the Inverter System and enable the engines to charge the Inverter batteries had never been installed at the factory.

26.     The absence of the engine-to-inverter wiring harness was a fundamental manufacturing omission that rendered the Inverter System incapable of operating as represented from the date of delivery, and this defect was latent and not reasonably discoverable by Plaintiff through inspection at the time of acceptance.

27.     The missing wiring harness was not discovered until September 2025, more than two years after delivery, when David Bolton, Vice President of Engineering for Intrepid Powerboats, personally acknowledged to Plaintiff that the required wiring component had not been installed and committed to having it installed; the harness was subsequently installed in September 2025.

28.     The installation of the missing wiring harness in September 2025 ultimately did not resolve the Inverter System's chronic malfunctions, as the system continued to display error codes and fail to operate reliably thereafter.

29.     Separately, during a June 2025 service visit, Intrepid Powerboats identified and addressed a rusted shower hose, a rusted dive door magnet, and a non-functional starboard baitwell pump, all of which are further evidence of the poor quality of manufacture and assembly of the Vessel as delivered to Plaintiff.

30.     The fiberglass defect on the sliding cabin door, identified during the June 2025 service visit, was left unresolved by Defendants and remains unrepaired.

31.     Plaintiff promptly notified Defendants of the defects identified at and after delivery and, consistent with his good-faith obligations and his reasonable belief that Defendants would honor their warranty, afforded Defendants repeated opportunities to cure the nonconformities over the course of his ownership.

32.     Defendants undertook their first repair attempt on the Inverter System following delivery in 2023, which failed to resolve the chronic error codes and battery charging failures.

33.     Defendants undertook a second repair attempt on the Inverter System, replacing Inverter No. 2, which likewise failed to cure the system's persistent malfunction, as error codes continued to appear upon each use.

34.     Defendants undertook a third repair attempt on the Inverter System, reprogramming the Mac Port parameters on the Mastervolt display, which similarly failed to resolve the underlying defect.

35.     Throughout these and subsequent repair attempts, Defendants' representatives, including Bryson Ashmun, Customer Care Manager for Intrepid Powerboats, Inc., assured Plaintiff that the issues were being actively investigated and addressed, and Plaintiff continued to cooperate with Defendants' repair efforts in reliance on those assurances.

36.     Plaintiff believes, and therefore avers, that additional repair attempts were made by Defendants on the Inverter System and other components of the Vessel beyond those specifically identified herein; the full history of all repair attempts, service visits, and related communications is within the possession and control of Defendants and will be the subject of discovery, and Plaintiff expressly reserves the right to seek leave to amend this Complaint to conform the pleadings to the evidence upon completion of discovery.

37.     On or about November 26, 2025, Plaintiff attempted to use the Vessel for the Thanksgiving holiday weekend and found that the Vetus Variable bow thruster remained inoperable, the JPO was non-functional due to low battery charge, and the Mastervolt and Mercury display screens were again showing error codes, preventing the safe use of the Vessel.

38.     On or about December 1, 2025, Plaintiff sent written correspondence to Bryson Ashmun, Intrepid Customer Care Manager, with copies to Terry McNew, David Bolton, and Joe Brenna, Vice President of Customer Support for Intrepid, documenting the following outstanding defects: (a) missing circuit breaker labels; (b) the Mastervolt display remaining disconnected from the Garmin network; (c) non-functional green LED indicator lights on the inverter breakers; (d) unresolved Mac Port parameter errors on the Mastervolt screen; (e) the

Vetus Variable bow thruster inoperable due to low inverter battery charge on November 26, 2025; and (f) persistent error codes on the Mastervolt and Mercury screens.

39.     In or around January 2026, Defendants undertook yet another repair attempt; however, Inverter No. 1, located on the port side in the Vessel's bilge compartment, became completely inoperable, showing no response whatsoever even with a 30-amp shore cable connected directly to the pedestal, as confirmed in writing by on-site technician DJ Anderson on January 14, 2026.

40.     In response to the January 2026 failure of Inverter No. 1, Bryson Ashmun acknowledged in writing that the inverter was non-functional and represented that he was returning to the inverter's manufacturer, Mastervolt, to seek a replacement unit.

41.     By letter dated on or about December 31, 2025, counsel for Plaintiff wrote to Defendants providing formal written notice of the Vessel's nonconformities, Plaintiff's rights under applicable law, and demand for an appropriate remedy; that letter was received and responded to by counsel for Intrepid Powerboats, Inc., appearing on behalf of Intrepid in the matter.

42.     Plaintiff's counsel and Litigation Counsel for Intrepid engaged in communications from January through March 2026 in which counsel sought an amicable resolution; those communications did not result in any resolution, and Defendants have not accepted the revocation of acceptance or provided any refund or adequate substitute remedy.

43.     During the pre-litigation communications, a final repair attempt was coordinated and completed. Despite the same, the vessel remains in defective and non-conforming condition.

44.     On or about May 6, 2026, following Plaintiff's revocation of acceptance and during the continuing pre-litigation period, Walt Putnam, a representative of Defendant Intrepid Powerboats, Inc., conducted an onsite visit of the Vessel to assess the condition of the Inverter System and to determine whether prior repair efforts undertaken by Defendants had cured the nonconformities; that visit confirmed that the connection between the Inverter System and the Vessel's Garmin chartplotter and autopilot network remained defective and only partially operational, and that the fiberglass defect on the Vessel's sliding cabin door remained unrepaired.

45.     Plaintiff's revocation of acceptance, effected on or about December 31, 2025, has remained continuously in effect from that date forward; Plaintiff has not retracted, waived, or rescinded the revocation; and any repair efforts, diagnostic visits, or assessments undertaken by Defendants after the date of revocation, including but not limited to the January 2026 service work and the May 6, 2026 onsite assessment by Walt Putnam, were conducted at Defendants' request and risk, without Plaintiff's agreement to forfeit or restrict his revocation rights, and at no time did Plaintiff agree to accept the Vessel back or to treat any post-revocation repair effort as a cure of the nonconformities.

46.     The Inverter System has on prior occasions, including following the September 2025 installation of the previously-missing factory wiring harness, appeared to be functioning correctly only to fail upon subsequent use of the Vessel; the durability of the most recent repair work undertaken by Defendants has not been confirmed under normal operating conditions on the water, and Plaintiff has no reasonable assurance that the Inverter System will function reliably going forward.

47.     Multiple marine brokers, including a broker employed by Intrepid (Paul Keeney) and a broker at Galati Yachts in Destin, Florida, advised Plaintiff that the Inverter System failures are the reason the Vessel has been unable to attract purchase offers near market value, causing Plaintiff to withdraw the Vessel from the Galati Yachts listing in June 2025.

48.     The nonconformities in the Vessel are so extensive and so fundamental to its safe and reliable operation that they substantially impair the value of the Vessel to Plaintiff for multiple independent reasons: (a) the Vessel's central electrical and power management infrastructure failed repeatedly and persistently throughout Plaintiff's ownership, including across multiple successive repair attempts that did not produce sustained functionality, such that Plaintiff has reasonably lost confidence in the Vessel; (b) the Vessel was sold with a missing factory wiring harness that went undiscovered for over two years and with components used by Intrepid on only two boats before abandonment, and the Vessel's documented history of defects and repair attempts has materially impaired its marketability, as confirmed by two independent marine brokers; and (c) defects in the Vessel's Garmin chartplotter and autopilot integration and in the fiberglass of the Vessel's sliding cabin door remain unrepaired as of the filing of this Complaint.

49.     At all times material hereto, the defects described herein were present at the time of manufacture and delivery and were caused by Intrepid Powerboats, Inc.'s deficient manufacturing, assembly, and quality control processes.

50.     Plaintiff has not received the benefit of the bargain for which he paid $993,895.00.

51.     Plaintiff has been denied the reasonable use of the Vessel for a significant portion of his ownership as a result of the persistent nonconformities.

52.     Plaintiff has performed all conditions precedent to bringing this action, or such conditions have been satisfied or excused.

53.     Prior to the filing of this action, Plaintiff sent written notice of revocation of acceptance to Defendants, identifying the nonconformities, explaining that the Vessel's value was substantially impaired, advising that Defendants had been afforded a reasonable number of opportunities to cure over more than two years and had failed to do so, and demanding a full refund of the purchase price.

54.     Plaintiff's revocation of acceptance was timely, was made within a reasonable time after it became reasonably apparent that the nonconformities could not be cured, and was made before any substantial change in the condition of the Vessel not caused by the defects themselves.

55.     Defendants have failed and refused to accept the revocation, return the purchase price, or provide any adequate remedy.

56.     Plaintiff has suffered incidental and consequential damages as a result of the conduct described herein.

57.     Plaintiff's incidental and consequential damages include, *inter alia*, dry storage fees incurred at multiple marinas during periods in which the Vessel could not be reliably operated due to the defects described herein, docking fees, transportation costs, out-of-pocket repairs, and loss of use.

58.     Plaintiff has retained the undersigned law firm and is obligated to pay a reasonable fee for their representation.

**COUNT I**
**REVOCATION OF ACCEPTANCE**
**Fla. Stat. § 672.608**
**(Against Intrepid Southeast, Inc.)**

- 12 -

59.     Plaintiff realleges and incorporates by reference paragraphs 1-81 above, as if fully set forth herein.

60.     The purchase of the Vessel is a transaction in goods governed by Article 2 of Florida's Uniform Commercial Code, Fla. Stat. Chapter 672.

61.     Defendant Intrepid Southeast, Inc. was the seller of the Vessel in this transaction, and Plaintiff was in direct contractual privity with Intrepid Southeast at the time of sale.

62.     Plaintiff accepted the Vessel in reasonable reliance upon the assumption that the nonconformities, which were latent and not reasonably discoverable upon inspection at the time of acceptance, including without limitation the missing factory wiring harness, would not exist or would be seasonably cured by Defendants, as contemplated by Fla. Stat. §§ 672.608(1)(a) and (1)(b).

63.     The nonconformities substantially impair the value of the Vessel to Plaintiff within the meaning of Fla. Stat. § 672.608(1) because the Vessel's central electrical and power management infrastructure has failed repeatedly and persistently throughout Plaintiff's ownership, the Vessel's primary docking safety systems have been inoperable for a substantial portion of Plaintiff's ownership, the Vessel was manufactured with a missing factory component that went undiscovered for over two years, and the Vessel cannot be safely operated in the manner for which it was designed, marketed, and sold.

64.     Plaintiff revoked his acceptance within a reasonable time after discovering that the nonconformities could not be cured, specifically following the further Inverter System failure in January 2026 combined with Defendants' acknowledgment that yet another

replacement component was required, and after the failure of pre-litigation settlement discussions to produce any resolution.

65.     Plaintiff notified Defendants of his revocation of acceptance in writing as required by Fla. Stat. § 672.608(2).

66.     The warranty's limitation of remedy to repair or replacement fails of its essential purpose pursuant to Fla. Stat. § 672.719(2) because, despite more than two and a half years of repair attempts, Defendants have been unable to deliver a conforming vessel, and resort to the full remedies available under the Uniform Commercial Code is therefore appropriate.

67.     Following effective revocation, Plaintiff has the same rights and duties with regard to the Vessel as if he had rejected it and is entitled to cancel, to recover the full purchase price paid, and to recover incidental and consequential damages pursuant to Fla. Stat. §§ 672.608, 672.711, and 672.714.

68.     As a direct and proximate result of the nonconformities and Defendants' failure to cure, Plaintiff has sustained damages including the full purchase price of $993,895.00, costs incurred in connection with the Vessel, loss of use, diminution in value, and other incidental and consequential damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant Intrepid Southeast, Inc. for revocation of acceptance, return of the full purchase price, and all incidental and consequential damages, together with prejudgment interest, costs, and attorneys' fees pursuant to 15 U.S.C. § 2310(d), and for such other and further relief as this Court deems just and proper.

**COUNT II**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**BREACH OF WRITTEN WARRANTY**
**15 U.S.C. §§ 2301 et seq.**
**(Against Intrepid Powerboats, Inc.)**

69. Plaintiff realleges and incorporates by reference paragraphs 1-81 above, as if fully set forth herein.

70. The Vessel is a "consumer product" as defined by 15 U.S.C. § 2301(1) because it is tangible personal property normally used for personal, family, or household purposes.

71. Plaintiff is a "consumer" as defined by 15 U.S.C. § 2301(3) because he is a buyer of the Vessel for purposes other than resale.

72. Defendant Intrepid Powerboats, Inc. is a "warrantor" within the meaning of 15 U.S.C. § 2301(5) because it issued the Warranty, a written warranty, in connection with the sale of the Vessel.

73. The Warranty constitutes a "written warranty" within the meaning of 15 U.S.C. § 2301(6) because it contains written promises and undertakings by Intrepid Powerboats relating to the nature of the Vessel and the remediation of defects.

74. Privity of contract is not required to maintain a claim for breach of a written warranty under the Magnuson-Moss Warranty Act against the issuing manufacturer-warrantor.

75. Intrepid Powerboats has failed to fulfill its written warranty obligations by failing to repair the Vessel's defects within a reasonable time and after a reasonable number of attempts, in violation of the Warranty and of 15 U.S.C. § 2304.

76. The warranty's exclusive remedy of repair or replacement has failed of its essential purpose because Intrepid Powerboats has been unable to deliver a conforming vessel after more than two and a half years and multiple repair attempts, and Plaintiff is therefore entitled to elect a refund of the full purchase price pursuant to 15 U.S.C. § 2304(a)(4).

77. The limitation of Plaintiff's remedy to repair or replacement is unconscionable and unenforceable under the circumstances of this case, where the Vessel was delivered with

a fundamental manufacturing defect that rendered its primary electrical system incapable of operating as represented, and where Intrepid Powerboats' own records and communications confirm that the system has never functioned correctly throughout Plaintiff's ownership.

78.     Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff is entitled to bring this civil action against Intrepid Powerboats for failure to comply with its written warranty obligations and is entitled to all remedies available under the Act, including a refund of the full purchase price.

79.     Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff is entitled to recover his reasonable attorneys' fees and costs from Intrepid Powerboats as the prevailing consumer in this action.

80.     As a direct and proximate result of Intrepid Powerboats' violations of the Magnuson-Moss Warranty Act, Plaintiff has suffered the damages described herein.

**WHEREFORE**, Plaintiff demands judgment against Defendant Intrepid Powerboats, Inc. for consequential, compensatory, expectancy, resulting, incidental, and reliance damages, prejudgment interest, and for costs and attorneys' fees pursuant to 15 U.S.C. § 2310(d), and for such other and further relief as this Court deems just and proper.

**COUNT III**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**BREACH OF WRITTEN AND IMPLIED WARRANTIES**
**15 U.S.C. §§ 2301 et seq.**
**(Against Intrepid Southeast, Inc.)**

81.     Plaintiff realleges and incorporates by reference paragraphs 1-81 above, as if fully set forth herein.

82.     The Vessel is a "consumer product" as defined by 15 U.S.C. § 2301(1).

83.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 2301(3).

84.     Defendant Intrepid Southeast, Inc. is a "supplier" within the meaning of 15 U.S.C. § 2301(4) because it is engaged in the business of making consumer products available to consumers.

85.     Intrepid Southeast transmitted and delivered to Plaintiff at the point of sale the written warranty issued in connection with the sale of the Vessel, and Intrepid Southeast is, for purposes of 15 U.S.C. § 2308, a supplier that gave a written warranty in connection with the sale of the Vessel.

86.     Intrepid Southeast has failed to fulfill the warranty obligations applicable to the Vessel by failing to cure the Vessel's defects within a reasonable time and after a reasonable number of attempts.

87.     Plaintiff was in direct contractual privity with Intrepid Southeast as the selling entity, as alleged above, and Intrepid Southeast breached the implied warranty of merchantability arising under Fla. Stat. § 672.314 with respect to the Vessel.

88.     Pursuant to 15 U.S.C. § 2308, Intrepid Southeast is prohibited from disclaiming or modifying the implied warranty of merchantability because a written warranty was given in connection with the sale of the Vessel, and any purported disclaimer or modification of the implied warranty in the warranty documentation is ineffective as a matter of law.

89.     The warranty's exclusive remedy of repair or replacement has failed of its essential purpose pursuant to Fla. Stat. § 672.719(2), and Plaintiff is therefore entitled to elect a refund of the full purchase price pursuant to 15 U.S.C. § 2304(a)(4).

90.     Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff is entitled to bring this civil action against Intrepid Southeast for failure to comply with its warranty obligations and is entitled to all remedies available under the Act, including a refund of the full purchase price.

91.     Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff is entitled to recover his reasonable attorneys' fees and costs from Intrepid Southeast as the prevailing consumer in this action.

92.     As a direct and proximate result of Intrepid Southeast's violations of the Magnuson-Moss Warranty Act, Plaintiff has suffered the damages described herein.

**WHEREFORE**, Plaintiff demands judgment against Defendant Intrepid Southeast, Inc. for consequential, compensatory, expectancy, resulting, incidental, and reliance damages, prejudgment interest, and for costs and attorneys' fees pursuant to 15 U.S.C. § 2310(d), and for such other and further relief as this Court deems just and proper.

### <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff ADAM ROHLMAN respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally as appropriate, granting the following relief:

(a) A declaration that Plaintiff effectively revoked his acceptance of the Vessel pursuant to Fla. Stat. § 672.608, and an order compelling Defendant Intrepid Southeast, Inc. to accept return of the Vessel and refund the full purchase price of $993,895.00, together with all incidental and consequential damages pursuant to Fla. Stat. §§ 672.711 and 672.714;

(b) In the alternative, compensatory damages for the diminution in value of the Vessel and all losses flowing from Defendants' breaches of implied warranty, including the full purchase price where the warranty has failed of its essential purpose;

(c) A refund or replacement remedy pursuant to 15 U.S.C. § 2304(a)(4) of the Magnuson-Moss Warranty Act;

(d) Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 2310(d)(2);

(e) Pre-judgment and post-judgment interest as permitted by law;

(f) Costs of suit; and

(g) Such other and further relief as this Court deems just and proper.

- 19 -

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable as of right.

Respectfully submitted,

*/s/ Joshua E. Feygin*
JOSHUA FEYGIN, ESQ.
FL Bar No.: 124685
Email:  JF@Lemonaidfirm.com
LEMONAID FIRM, PLLC
4601 Sheridan Street
Hollywood, FL 33021
Tel: 954.338.5188
*Counsel for Plaintiff*